IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS BINFORD, | ) | Case No. 1:19-cv-1039 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| BRIGHAM SLOAN, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Carlos Binford, an Ohio prisoner serving an aggregate prison sentence of 11 years for felonious assault with a firearm specification, having weapons under disability, and improperly handling firearms in a motor vehicle, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Binford claims that his convictions and sentences in *State v. Binford*, Cuy. Cty. Com. Pl. Case No. CR-16-610418-A, violated his constitutional rights. ECF Doc. 1. Respondent, Warden Brigham Sloan[1], filed a return of writ on July 19, 2019. ECF Doc. 6. Binford filed a traverse on December 26, 2019. ECF Doc. 12. This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Binford's petition.[2] Because all of Binford's claims are voluntarily dismissed, procedurally defaulted, or meritless, I

---

[1] Brigham Sloan was warden of Lake Erie Correctional Institution – the facility at which Binford was incarcerated when he filed his petition. Binford is now housed at Ross Correctional Institution, and Donnie Morgan is the warden of that institution. https://appgateway.drc.ohio.gov/OffenderSearch/ Search/Details/A692941 (last visited Aug. 14, 2020).

[2] Chief Judge Patricia Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference. ECF Doc. 3.

recommend that the Court deny Binford's petition for writ of habeas corpus.  I also recommend that the court deny Binford a certificate of appealability.

I.      **State Court History**

    A.      **State Trial Court, Case No. CR-16-610418-A**

On October 11, 2016, a Cuyahoga County, Ohio grand jury indicted Binford on: one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) with a one-year and three-year firearm specification under Ohio Rev. Code §§ 2941.141(A) and 2941.145(A); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) with a one-year and three-year firearm specification under Ohio Rev. Code §§ 2941.141(A) and 2941.145(A); one count of having weapons under disability in violation of Ohio Rev. Code § 2923.13(A)(3); and one count of improperly handling firearms in a motor vehicle in violation of Ohio Rev. Code § 2923.16(B).  ECF Doc. 6-1 at 3-5.  Specifically, the indictment alleged that Binford had used a handgun to cause serious physical harm to "John Doe (D.W.)"; was not allowed to possess or use a firearm because he was previously convicted of felony drug possession in Cuy. Cty. Com. Pl. Case No. CR-11-549776; and had transported or possessed the loaded firearm in a motor vehicle in such a manner that it was accessible to the operator or a passenger.  ECF Doc. 6-1 at 3-5. Binford pleaded "not guilty" on October 17, 2016.

The case proceeded to jury trial beginning on January 23, 2017.  At trial, Deandre Ward testified that on June 26, 2016, he went to Shenell Owens's house to meet with his dad, Deandre Rencher.  ECF Doc. 8 at 230-31.  Rencher told Ward that he "wanted to confront a man that bust his window," and that man (later identified as Binford) showed up to Owens's house with another man (later identified as Maurice Henderson) and confronted Rencher and Ward.  ECF Doc. 8 at 231-34.  Ward said that Rencher and Binford "talked it out," and everyone went their

separate ways after "getting nowhere." ECF Doc. 8 at 232; *see also* ECF Doc. 8 at 389. Later, Ward called his Rencher to ask for $20 to buy liquor, and his Rencher told him to meet him at a park to get it. ECF Doc. 8 at 234. Ward testified that, when he arrived, he saw Rencher in the middle of the street with his shirt ripped and neck bleeding. ECF Doc. 8 at 236. Binford and the other man were also there. ECF Doc. 8 at 236. Ward "threw [his] car in park" and got out. ECF Doc. 8 at 237. When he got out of his car, Ward saw Binford go to the driver's side of the car he had been driving, and the other was man standing on the passenger side. ECF Doc. 8 at 238. Ward asked the man on the passenger side of Binford's car what was going on. ECF Doc. 8 at 238. Ward and that man started fighting. ECF Doc. 8 at 239-40. While Ward and the other man were fighting, Binford got into the driver's seat of the car and "pulled off." ECF Doc. 8 at 240. The other man "broke loose and began to run for the car." ECF Doc. 8 at 240. Ward testified that he saw the other man fall, and he "kind of chased him" in order to kick the man while he was on the ground. ECF Doc. 8 at 241. Before he could kick the man, Ward heard "[a]bout five shots," saw Binford's hand hanging out the window of the car with a gun, and felt that he was shot in the leg. ECF Doc. 8 at 241-42. Ward said that the other man then "jumped in the passenger seat, and they pulled off." ECF Doc. 8 at 242.

Rencher also testified. ECF Doc. 8 at 294. Rencher said that, on June 26, 2016, he was driving by his ex-girlfriend Owens's house, and stopped to ask if she knew who broke his window. ECF Doc. 8 at 296. Owens called her then-boyfriend (later identified as Binford), and Rencher told him that he wanted to talk to him about his window being broken. ECF Doc. 8 at 297. Binford and another person arrived 15 minutes later. ECF Doc. 8 at 297. Rencher also asked Ward to come over to "watch [his] back." ECF Doc. 8 at 298. Rencher told Binford that he came to believe Binford had broken his window, and that Binford owed him $300. ECF Doc.

8 at 298-99. After arguing with Binford, Rencher got into his car and left. ECF Doc. 8 at 300. Later, Rencher went to the playground where he shot basketball to talk with his friends. ECF Doc. 8 at 301. Rencher said that Ward asked to borrow $20, and he told Ward to meet him at the park. ECF Doc. 8 at 303. By the time Ward arrived, Rencher had engaged in a "scuffle" with Binford. ECF Doc. 8 at 303. Rencher said that Binford had driven up to the park, got out of his car, walked over to him, and said "I ain't got nothing for you, man" before the two started "battling." ECF Doc. 8 at 304-05. The people around them broke the fight up, and Binford ran to his car. ECF Doc. 8 at 306. Rencher said that, once Binford reached his car, he opened the back door and came out with a gun. ECF Doc. 8 at 308. Binford shot two times in the air and got back into the car. ECF Doc. 8 at 308. Rencher testified that, after Binford fired the two shots in the air, he noticed that Ward was at the scene "scuffling" with "the other guy" who was with Binford at Owens's house. ECF Doc. 8 at 309-10. Rencher saw "the other guy" run, and then he saw his son running after "the guy had slipped and fell." ECF Doc. 8 at 309-10. Rencher said that he then saw Binford get into his car, start driving, and shoot "about five shots" through the passenger-side window. ECF Doc. 8 at 310-11. Rencher approached Ward and discovered that he had been shot in the leg. ECF Doc. 8 at 313-14.

On cross-examination, Binford's attorney asked Rencher about his statements to police and whether he knew what was recorded on the officers' body cameras. ECF Doc. 8 at 323. The questioning proceeded as follows:

Q.      And did you know that they were using body cameras, the police?

A.      I wasn't paying attention to that.  I was paying attention to my son.

Q.      Well, would you be surprised to know that you were on body camera?

A.      Well, I wouldn't be surprised, because I was there.

* * *

Q.      Do you ever remember telling an officer, you know, there at the scene, that you were fighting somebody, and somebody else drove up and shot your son in the leg?

A.      No.

* * *

Q.      If I were to tell you that this information that you claim you gave to the police about broken windows was not on the body cams, would that surprise you?

A.      Well, how – I don't know.  Maybe it wasn't, maybe it was.  But I know the questions that they asked me while I was there.  I couldn't concentrate on this and that while I'm holding my son's leg.  And everybody was excited and, you know, I just said what I said.

* * *

Q.      So you never told the police that your son chased Carlos to a car and Carols got a gun out of the car and shot him?

A.      My son did not chase Carlos to a car.

Q.      So if that were to be on the body cam, that's not correct?

A.      That's not correct.

ECF Doc. 8 at 323-24, 328, 331.

Officer Antoine Payne also testified.  ECF Doc. 8 at 362.  Officer Payne said that he responded to the "shots fired, male shot" call on June 26, 2016.  ECF Doc. 8 at 366-67.  He found EMS treating Ward and spoke to Rencher.  ECF Doc. 8 at 367.  After having his memory refreshed with his report[3], Officer Payne said that he got a description of the suspect and broadcasted the description over the radio.  ECF Doc. 8 at 368-69.  Officer Payne inspected the crime scene and then went to the hospital to check on Ward.  ECF Doc. 8 at 369-70.  Officer

---

[3] The state identified Officer Payne's police report as "State's Exhibit 10," but did not seek to admit the report as evidence.  ECF Doc. 8 at 368, 386-89.

Payne took a statement from Ward, filed his report, and took his next assignment.  ECF Doc. 8 at 370.  Officer Payne testified that, after he filed his report a detective took over the investigation.  ECF Doc. 8 at 370-71.  On cross-examination, Binford's attorney asked Officer Payne about his weapons training and whether he learned that firearms expel a shell casing when fired.  ECF Doc. 8 at 371.  Officer Payne said that he had learned that, but he found no shell casings at the scene.  ECF Doc. 8 at 371.  And Binford's attorney asked no further questions.[4]  ECF Doc. 8 at 371-72.

Detective John Kraynik also testified.  ECF Doc. 8 at 374.  Detective Kraynik said that he investigated the incident and presented a photographic lineup to Ward.  ECF Doc. 8 at 375, 377.  The photographs in the lineup were not given names but were assigned numbers.  ECF Doc. 8 at 377.  Detective Kraynik said that Ward identified subject number five, who was Binford.  ECF Doc. 8 at 381-82.  Detective Kraynik said that Ward "told [him] that he was 100 percent positive that" the person he identified was the shooter.  ECF Doc. 8 at 382.  The state also offered, and the court admitted, records of Binford's prior convictions with information about his prison term and post-release control redacted.  ECF Doc. 8 at 387.

Before proceeding to closing arguments, the state noted that Binford's counsel would likely refer to the body camera footage after counsel had brought it up in cross-examination, and the court indicated that discussing the body camera footage during closing arguments would not be permitted because the body camera footage had not been shown.  ECF Doc. 8 at 423-24.  During his closing statements, Binford's attorney noted that relatively little police work was done in this case, and that Ward and Rencher had not made formal witness statements that they signed for the officers.  ECF Doc. 8 at 462, 464.  Counsel also told the jury that there was a

---

[4] After his attorney rested, Binford said "Excuse me, can I ask," and the court said "No, you cannot."  ECF Doc. 8 at 372.

possibility that there was some other shooter and noted that Henderson had testified that Binford did not have or fire a gun.  ECF Doc. 8 at 464-65.

On January 27, 2017, the jury found Binford guilty of all counts and the firearms specifications.  ECF Doc. 6-1 at 7.  The trial court sentenced Binford to an aggregate 11-year prison sentence, including: (1) seven-year prison terms for each of the two felonious-assault counts, to be served concurrently; (2) a one-year prison term for the having-weapons-under-disability count, to be served consecutively to the terms imposed for the felonious-assault counts; (3) a seven-month prison term for the improper-handling count, to be served concurrently with the term imposed for the having-weapons-under-disability count; and (4) two one-year prison terms and two three-year prison terms for the firearm specifications, to be served concurrently with each other but consecutive to the terms imposed on all other counts.  ECF Doc. 6-1 at 7.

### B.    Direct Appeal, Case No. 105414

On February 2, 2017, Binford, through new counsel, appealed to the Ohio Court of Appeals.  ECF Doc. 6-1 at 9-10.  Binford raised the following assignments of error:

1.  The jury found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment.

2.  The evidence was not legally sufficient to sustain a guilty verdict.

3.  Appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution, and Article I, Section 10, Ohio Constitution.

4.  The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines.

ECF Doc. 6-1 at 15, 23-31.  In his second assignment of error, Binford argued that Ward's and Rencher's testimony was not sufficient to support the felonious-assault convictions because it was inconsistent with other testimony and evidence in the record, such as Henderson's testimony

that he did not see Binford possess a gun.  ECF Doc. 6-1 at 25-27.  In his third assignment of error, Binford argued that trial counsel was constitutionally ineffective for failing to impeach Rencher's testimony using the body camera footage and by failing to introduce that footage as evidence.  ECF Doc. 6-1 at 28.

On January 11, 2018, the Ohio Court of Appeals affirmed Binford's convictions and sentences.  ECF Doc. 6-1 at 49-67.  The Ohio Court of Appeals noted that, in reviewing Binford's sufficiency-of-the-evidence claim, it was not permitted to make credibility assessments, but was limited to determining whether a rational trier of fact could have concluded that Binford committed the alleged offenses in light of the evidence presented at trial.  ECF Doc. 6-1 at 57.  The court concluded that a rational trier of fact could have concluded that Binford committed the required element of each count based on: (1) Ward and Rencher's testimony that Binford shot Ward through the passenger window of his car as he was driving; and (2) Binford's stipulation to his prior felony conviction.  ECF Doc. 6-1 at 57-58.  The court also noted that the state was not required to produce physical evidence that Binford possessed a gun and that the jury could have reasonably believed Ward and Rencher's trial testimony over Henderson's conflicting testimony.  ECF Doc. 6-1 at 57-58.  The Ohio Court of Appeals also determined that Binford could not show that he was prejudiced by trial counsel's failure to have the body camera footage admitted or to refer to the footage in his closing arguments.  The court explained that:

> The statements [recorded in the body camera footage] were not necessarily helpful to Binford's defense, however.  Rencher's statement that "somebody" drove by and shot Ward as Rencher was fighting "somebody else" does not necessarily mean that the shooter was not Binford.  And Rencher's alleged statement on the body camera video that Ward chased Binford to his car, where he pulled out a gun and shot Ward, is obviously not helpful to Binford.  Accordingly, Binford has failed to demonstrate a reasonable probability that he would not have been convicted had defense counsel been able to refer during closing argument to the alleged inconsistent statements on the body cam video.

ECF Doc. 6-1 at 62.

### C.    Appeal to the Ohio Supreme Court, Case No. 2018-0248

On February 12, 2018, Binford appealed, *pro se*, to the Ohio Supreme Court.  ECF Doc. 6-1 at 68.  Binford's memorandum in support of jurisdiction raised four propositions of law:

**Proposition of Law No. I:**
Appellant, Carlos Binford's conviction was against the manifest weight of the evidence

**Proposition of Law No. II:**
Appellant's convictions were not supported by sufficient evidence, and the trial court erred by denying his motion for acquittal

**Proposition of Law No. III:**
Appellant was denied effective assistance of counsel in violation of amendments VI and XIV, of the United States Constitution and Article I, Section 10, Ohio Constitution

**Proposition of Law No. IV:**
The trial court abused its discretion by imposing a prison sentence contrary to R.C. § 2929.14 and the purpose and principles of the felony sentencing guidelines

ECF Doc. 6-1 at 71, 76-86.  To support these propositions of law, Binford repeated the same arguments that he had made before the Ohio Court of Appeals.  *See* ECF Doc. 6-1 at 81-85.  On May 9, 2018, the Ohio Supreme Court declined jurisdiction over Binford's appeal.  ECF Doc. 6-1 at 107.

### D.    Appellate Rule 26(B) Application to Reopen

On April 5, 2018, while his appeal to the Ohio Supreme Court was pending, Binford filed a *pro se* Ohio App. R. 26(B) application to reopen his direct appeal.  ECF Doc. 6-1 at 108-18.  Binford argued that his appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to impeach "the state's star witness" (Rencher) with body camera footage and for failing to introduce the body camera footage into evidence because that evidence could have persuaded the jury to discredit Rencher and Ward's conflicting trial testimony.  ECF

9

Doc. 6-1 at 111-18.  On July 31, 2018, the Ohio Court of Appeals denied Binford's Ohio App. R.

26(B) application, explaining that it had already addressed Binford's ineffective-assistance-of-

trial counsel claim on direct appeal and that *res judicata* precluded them from considering that

issue again.  ECF Doc. 6-1 at 128-31.  Binford did not appeal the Ohio Court of Appeals'

decision to the Ohio Supreme Court.

## II.    Federal Habeas Petition

On May 9, 2019, Binford filed his petition for writ of habeas corpus.  ECF Doc. 1.

Binford's petition raises six grounds for relief:

**Ground One:**  Actual innocence claim

**Supporting Facts:**  Petitioner is actually innocent, but trial counsel withheld exculpatory undisclosed statements of a police report of a key state witness stating that another male, and not Petitioner, had shot the victim, Mr. Deandre Ward.

**Ground Two:**  Ineffective assistance of appellate counsel

**Supporting Facts:**  Appellate counsel was ineffective for failing to raise more important issues than the ones presented in direct appeal.

**Ground Three:**  Manifest Weight of the Evidence

**Supporting Facts:**  The jury in the case at bar clearly lost its way when they found Petitioner guilty of all charges in the indictment.

**Ground Four:**  Sufficiency of the evidence

**Supporting Facts:**  The State clearly had no physical evidence.  The only evidence linking Petitioner to the crime were inconsistent statements of Mr. Ward and Mr. Rencher whom were biased against Petitioner.

**Ground Five:**  Ineffective Assistance of Counsel

**Supporting Facts:**  Petitioner was denied the effective assistance of counsel when counsel failed to put on a proper defense on his behalf and withheld favorable exculpatory undisclosed statements from the jury and Petitioner's trial.

**Ground Six:**  The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines.

**Supporting Facts:**  At the time that Petitioner was sentenced by the trial court, the trial court was unaware of the fact that trial counsel had wrongly excluded favorable undisclosed statements that were exculpatory and impeachment material from the jury and Petitioner's trial, which puts the sentencing factor in a whole new light under Petitioner's actual innocence claim.

ECF Doc. 1 at 5-6, 8-9, 14-15; *see also* ECF Doc. 1-1 at 1-32 (memorandum in support).

## III.    Applicable Legal Standards

### A.    AEDPA Standard for Merits Review

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), which established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

When the claim presented in a habeas corpus petition has been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

11

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement. *Bobby v. Dixon*, 565 U.S. 23, 24, (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

**B.**    **Procedural Default**

"Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal

claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* at 826-827 (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted); 28 U.S.C. § 2254(b)(1)(A).  The petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  Nevertheless, petitioners are only required to have pursued *available* remedies and are not required to pursue *clearly futile* state remedies.  *See Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d at 827.  Here, federal habeas review is barred when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available.  *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To determine

whether an Ohio procedural rule bars habeas review, courts in the Sixth Circuit apply a four-part test to determine: (1) whether petitioner failed to comply with an Ohio procedural rule; (2) whether Ohio courts regularly enforce that rule; (3) whether the rule an adequate and independent state-law ground for denying review of a constitutional claim; and (4) whether the petitioner can show cause for his failure to comply with the state rule and that he suffered prejudice from the alleged violation of his federal rights.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Williams v. Coyle*, 260 F.3d 684, 693; *see also Gerth*, 938 F.3d at 829-830 (holding that Ohio's *res judicata* doctrine is an adequate and independent state procedural ground that Ohio courts regularly apply).

When the respondent asserts that the petitioner failed to "fairly present" his claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."  *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

Procedural default may be excused on two bases.  First, as noted above, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external

14

factor to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim, and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## IV.    Facts

Analysis of Binford's petition begins with the facts recited in the Ohio Court of Appeals opinion on direct appeal.  These factual findings are presumed correct unless Binford rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

> **{¶3}**    Deandre Rencher ("Rencher") testified that on June 26, 2016, he called his ex-girlfriend, Shennell [sic] Owens ("Owens"), and told her that he wanted to speak to Binford, her current boyfriend, because several people had told him that Binford had broken out the window in Rencher's car several months earlier. Rencher then called his son, Deandre Ward ("Ward") to meet him at Owens's apartment "to watch his back."  At that time, Rencher only knew Binford's name as "Los."

15

{¶4}    Binford and his cousin, Maurice Henderson, met Rencher and Ward at Owens's apartment.  Rencher and Binford argued about the window.  Rencher told Binford that he owed him $300, the cost to repair the window, and Binford denied breaking the window.  Eventually everyone left.

{¶5}    Rencher said that later that day, he went to a park and met up with a friend of his.  As they sat on a park bench talking, he saw a car park on a street next to the park.  Rencher saw Binford and two other men, one of them Henderson, get out of the car.  Rencher testified that Binford then walked up to him and said, "I ain't got nothing for you man," which Rencher understood to mean that Binford was not going to pay him for the window.  Rencher then stood up and began fighting with Binford.  He said he eventually pinned Binford against a nearby tree, but the other men pulled him and Binford apart, and Binford ran to his car.

{¶6}    Rencher began walking toward Binford's car.  He testified that as he reached the street, he saw Binford open the back door of his car, reach in the back seat, pull out a gun, and shoot twice in the air.  Binford then got in the driver's seat of his car.

{¶7}    Rencher said that as he turned around, he noticed his son Ward fighting with Henderson.  He saw Henderson run away but then fall.  Ward ran after him.  As Ward neared Henderson, Rencher saw Binford driving his car up the street.  Rencher said that the passenger window of Binford's car was open and as Binford drove by Henderson and Ward, he saw Binford "hanging out the window shooting."  Rencher said he heard at least five shots.  Rencher then heard Ward say, "Dad, I'm hit," and he ran over to Ward.  Henderson jumped off the ground, ran to Binford's car and got in, and they drove away.  Rencher testified that several people who were at the park told him Binford's name, and Rencher gave the name to the police when they arrived at the scene.

{¶8}    Ward testified that there were "just words" but no physical altercation when Rencher confronted Binford at Owens's apartment earlier in the day about the broken window.  Ward said that later that day, he went to the park to meet his father to borrow $20 from him.  He testified that as he parked his car, he saw his father standing in the middle of the street, his shirt ripped and his neck bleeding.  Ward also saw Binford, who was getting in his car, and Henderson, who was standing next to Binford's car.

{¶9}    Ward testified that he went up to Henderson and asked him what was going on.  According to Ward, he and Henderson "locked up" and tried to slam each other to the ground.  As they were fighting, Binford began pulling away.  Henderson broke loose from Ward and began running toward the car but then fell down.  Ward testified that he ran after Henderson and, as he reached him and was about to kick him, he heard about five shots.  Ward said he looked up, saw Binford's hand "hanging out the window," and felt that he had been shot.  At the

16

same time, Henderson got up, ran toward Binford's car and got in, and the car pulled away.

**{¶10}**  Ward testified that he told the police on the scene that he did not know who shot him because he did not know Binford's name.  Later, after he learned Binford's name from his father, he called the police and gave them the name. Cleveland police detective John Kraynik testified that he showed a photo lineup to Ward, who picked Binford out of the lineup.  Ward told Kraynik that he was 100 percent positive of his identification.

**{¶11}**  Owens testified that when Rencher was arguing with Binford at her apartment, she told him that he knew that Binford had not broken his window, and that he was merely trying to get back with her by causing problems with Binford. She concurred that everyone left before there was any physical altercation.

**{¶13}**  Henderson testified in Binford's defense.  He said that he was with Binford at Owens's apartment earlier in the day on June 26, 2016, and that he spent most of the day with Binford.  He said that Binford went up to Rencher at the park and tried to have a conversation with him, but the two men started fighting.  Henderson admitted that he fought with Ward when Ward showed up at the park.  He said that as he was fighting with Ward, he heard shots, so he began running toward Binford's car.  He said he fell but then got up and ran to Binford's car, and when he got in, Binford drove away.

**{¶14}**  Henderson testified that no shots were fired from the car as they drove away.  He testified further that he never saw a gun in Binford's car that day, and he denied that Binford retrieved a gun from his car at the park or that he shot in the air or at anyone.  Henderson acknowledged that as a prior felon, he is not allowed to carry or be around guns and said that he would never have gotten in Binford's car if Binford had a gun.

\* \* \*

**{¶32}**  The record reflects that during his cross-examination of Rencher, defense counsel asked Rencher about statements he made to the police on the video. Counsel asked Rencher if he remembered telling an officer at the scene "that you were fighting somebody, and somebody else drove up and shot your son in the leg?"  Rencher said he did not remember making this statement.  Defense counsel also questioned Rencher regarding whether he had told the police that Ward chased Binford to his car, and that Binford then got a gun out of the car and shot him.  When Rencher denied that Ward had chased Binford to his car, counsel questioned, "[s]o if that were to be on the body cam, that's not correct?"  Rencher then stated, "That's not correct."

ECF Doc. 6-1 at 5-55, 61.

V.      **Analysis**

A.      **Voluntarily Dismissed Grounds**

Binford's petition contains fully developed arguments for his Ground One actual-

innocence claim, his Ground Two ineffective-assistance-of-appellate-counsel claim, his Ground

Three manifest-weight claim, and his Ground Six substantively-unreasonable-sentence claim.

ECF Doc. 1-1 at 1-24, 30-32.  And Warden Sloan – correctly – responds that: (1) the Ground

One actual-innocence claim, the Ground Three manifest-weight claim, and the Ground Six

substantively-unreasonable-sentence claim are not cognizable federal constitutional claims; and

(2) the Ground Two ineffective-assistance-of-appellate-counsel claim was procedurally defaulted

because Binford failed to appeal the denial of his Rule 26(B) application to the Ohio Supreme

Court.  ECF Doc. 6 at 10-20.  Binford's traverse concedes the defects in his Grounds One, Two,

Three, and Six claims and states that he "voluntarily dismisses" them.  ECF Doc. 12 at 3-5.

Because Binford has conceded the defects barring his Grounds One, Two, Three, and Six

claims and seeks to voluntarily dismiss them, I recommend that the Court dismiss Binford's

Ground One, Ground Two, Ground Three, and Ground Six claims.

B.      **Ground Four**

Binford's Ground Four claim argues that his convictions violated his due process rights

because the state presented insufficient evidence to support his convictions.  ECF Doc. 1-1 at 24-

27.  Specifically, Binford asserts that, because Rencher's police-report statements conflicted with

Henderson's testimony and with Rencher and Ward's trial testimony, the state did not satisfy its

burden to produce evidence showing that Binford: (1) knowingly caused or attempted to cause

harm to Ward; (2) knowingly possessed and used a firearm; or (3) knowingly transported or

possessed a firearm in a motor vehicle with the firearm being accessible to the operator or

passenger without leaving the vehicle.  ECF Doc. 1-1 at 25-27.  Binford contends that no reasonable juror could have found him guilty beyond a reasonable doubt when evidence could have supported an alternative-shooter theory.  ECF Doc. 1-1 at 27.  Warden Sloan responds that the Ohio Court of Appeals reasonably determined that the evidence at trial was sufficient for a reasonable juror to conclude that Binford committed the offenses of which he was convicted, and that the Ohio Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law.  ECF Doc. 6 at 25-28.[5]

"The Fourteenth Amendment's Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt."  *Thomas v. Stephenson*, 898 F.3d 693, 702 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  When a criminal defendant alleges that the evidence adduced at trial was insufficient to support his conviction, the court must determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On habeas review, this inquiry is further filtered through the deferential standard of 28 U.S.C. § 2254(d).  *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (*en banc*) (explaining that a state court's decision in a federal habeas sufficiency-of-the-evidence challenge receives "double deference" – first, to the jury's verdict, and second, to the state court's consideration of the verdict); *see also* 28 U.S.C. § 2254(d); *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473.  Thus, a federal habeas court reviewing a sufficiency-of-the-evidence claim must determine whether the state

---

[5] Binford's traverse asks that the court withhold ruling on his sufficiency-of-the-evidence claim until it rules upon his motion to expand the record to include the body-camera footage and his motion for an evidentiary hearing.  ECF Doc. 12 at 7-9.  The court denied both motions in a March 27, 2020 order, and Binford did not object.  ECF Doc. 17.  Further, because Binford concedes that the body-camera footage was not presented to the jury at trial, it is irrelevant to this court's review of his sufficiency-of-the-evidence claim.  *See Herrera*, 506 U.S. at 402; *Jackson*, 443 U.S. at 318.

appellate court reasonably concluded that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  In reviewing a sufficiency-of-the-evidence claim, we may only consider the evidence adduced at trial and may not consider non-record evidence, including evidence that, allegedly, was newly discovered.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (citing *Jackson*, 443 U.S. at 318).  And the court considers *all* the evidence admitted at trial – even if its admission was error.  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).  The court also does not reweigh evidence or redetermine the credibility of any witnesses.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony").

To show that a defendant committed a felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1)-(2), the state is required to prove that the defendant: (1) knowingly "[c]ause[d] serious physical harm to another . . ."; or (2) knowingly "[c]ause[d] or attempt[ed] to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."  If the state includes a firearms specification in the indictment, a defendant may be subject to: (1) an additional one-year mandatory prison term if the state proves that he "had a firearm on or about [his] person or under [his] control while committing the offense; or (2) an additional three-year mandatory prison term if the state proves that he "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense."  Ohio Rev. Code §§ 2941.141(A), 2941.145(A).  To prove that a defendant had weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3), the state must show that he was "under indictment for or ha[d] been convicted of any felony offense involving the illegal possession, use, sale,

administration, distribution, or trafficking in any drug of abuse . . . ."  And to prove that a

defendant improperly handled a firearm in a motor vehicle in violation of Ohio Rev. Code

§ 2923.16(B), the state must show that he "knowingly transport[ed] or ha[d] a loaded firearm in a

motor vehicle in such a manner that the firearm [was] accessible to the operator or any passenger

without leaving the vehicle."

 Binford's Ground Four claim fails on the merits.  In reviewing Binford's sufficiency-of-

the-evidence claim, the Ohio Court of Appeals cited and applied Ohio precedent that is

consistent with the standards announced in *Jackson* and its progeny.  *Jackson*, 443 U.S. at 319;

ECF Doc. 6-1 56-58.  Further, the Ohio Court of Appeals reasonably determined that the

prosecution adduced sufficient evidence to support the requirements of each of the offenses,

including: (1) Rencher's and Ward's testimony that Binford fired shots at Ward while Binford

was operating his car; (2) Binford's stipulation to records showing that he had a prior felony drug

possession conviction; and (3) Detective Kraynik's testimony that Ward identified Binford as the

shooter during a photo array.  28 U.S.C. § 2254(d); *Jackson*, 443 U.S. at 319; *Davis v. Lafler*,

658 F.3d at 531-35; *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473; Ohio

Rev. Code §§ 2903.11(A)(1)-(2), 2923.13(A)(3), 2923.16(B), 2941.141(A), 2941.145(A); ECF

Doc. 6-1 at 57; ECF Doc. 8 at 239-42, 303-14, 375, 377, 381-82, 387.  Further, Binford's

argument that other evidence not in the trial record could have impeached witness credibility and

supported a finding that someone else shot Ward is unavailing because we are not permitted to

consider that evidence when deciding Binford's Ground Four claim.  *Herrera*, 506 U.S. at 402.

Moreover, even if other evidence had been inconsistent with Rencher's and Ward's testimony,

the jury was permitted to discount that evidence and rely upon Rencher's and Ward's testimony

to find that Binford committed the charged offenses.  *Matthews*, 319 F.3d at 788   And this court may not re-weigh t-he evidence.  *Id.*

Because the Ohio Court of Appeals applied law consistent with clearly established federal standards and reasonably determined that the prosecution adduced evidence sufficient evidence to support the essential elements of Binford's convictions, Binford's Ground Four claim is meritless.  Accordingly, I recommend that the court deny Binford's Ground Four claim.

### C.      Ground Five

In his Ground Five claim, Binford argues that trial counsel should have used Rencher's statements to the police (as reflected in police reports) to discredit Rencher's and Ward's trial testimony.  ECF Doc. 1-1 at 28.  Binford also "restates the same cumulative errors of trial counsel stated in his [Ground One] claim" – that counsel should have (1) questioned Officer Payne about Rencher's statements in the police report and body-camera video footage; (2) used the police report and body-camera video footage to impeach Rencher's and Ward's trial testimony; (3) used the police report and body-camera video footage to discredit the police investigation; and (4) revisited the crime scene to investigate eye-witnesses and determine if someone had seen Henderson shoot Ward.  ECF Doc. 1-1 at 8-17, 28; *see also* ECF Doc. 12 at 10-13.  Binford contends that trial counsel's failure to produce the police report before the jury prejudiced him because the police report establishes that he was actually innocent of his convictions.  ECF Doc. 1-1 at 29-30.  Warden Sloan responds that Binford's s Ground Five ineffective-assistance-of-trial-counsel claim is meritless because he failed to show that the Ohio Court of Appeals unreasonably concluded that trial counsel's performance was not deficient and did not prejudice him.  ECF Doc. 6 at 28-32.

### 1.    Ineffective-Assistance-of-Trial-Counsel Standard

The right to effective assistance of counsel extends through the first appeal as of right.

*Evitts v. Lucey*, 469 U.S. 387, 392 (1985).  In *Strickland v. Washington*, the U.S. Supreme Court

established that a petitioner claiming ineffective assistance of counsel must show that:

(1) counsel's representation "fell below an objective standard of reasonableness," such that he

was not performing as counsel guaranteed under the *Sixth Amendment*; and (2) counsel's

deficient performance prejudiced the defendant.  466 U.S. 668, 688 (1984).  Under the first

prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment." *Id.* at 690.  For prejudice, the petitioner must show that there was a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694.

### 2.    Procedural Default

Most of Binford's theories on how trial counsel's representation was constitutionally

ineffective are procedurally defaulted.[6]  Although Binford raised an ineffective-assistance-of-

trial-counsel claim before the Ohio Court of Appeals and Ohio Supreme Court, his argument

before those courts focused only on counsel's failure to introduce into evidence the body-camera

footage and failure to use that footage to impeach Rencher's and Ward's testimony.  ECF Doc.

6-1 at 28, 81-85, 111-18.  Binford did not argue – as he does now – that counsel was ineffective

for failing to: (1) question Officer Payne about Rencher's statements in the police report and

body-camera footage; (2) using Officer Payne's police report to impeach Rencher's and Ward's

---

[6] Although Warden Sloan does not argue that Binford's Ground Five claims are procedurally defaulted, the court *sua sponte* may raise procedural default especially when, as here, the petitioner has an opportunity to respond.  *See Lorraine v. Coyle*, 291 F.3d 416, 426, *corrected in* 307 F.3d 459 (6th Cir. 2002); *see also Morse v. Trippett*, 37 F. App'x 96, 107 n.4 (6th Cir. 2002).

trial testimony; (3) using the police report and body-camera footage to discredit the police investigation; and (4) visiting the crime scene to conduct his own investigation.  *Compare* ECF Doc. 1-1 at 8-17, 28, *with* ECF Doc. 6-1 at 28, 81-85, 111-18.  Because a claimant must raise both the legal and *factual* basis for his claim to the state courts in order to avoid procedural default, Binford's failure to raise these particularized arguments before the Ohio Court of Appeals and Ohio Supreme Court resulted in a failure to "fairly present" those arguments. *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681.  Thus, those arguments are procedurally defaulted.  *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.

Binford also cannot overcome his procedural default.  Here, Binford has not pointed to a factor external to his defense that caused him to fail to raise his procedurally defaulted ineffective-assistance-of-trial-counsel arguments before the Ohio Court of Appeals and Ohio Supreme Court.  *Coleman*, 501 U.S. at 750.  He has, however, argued that his ineffective-assistance-of-trial-counsel claims should be permitted to proceed because the evidence counsel failed to offer in evidence and use would have shown that he was actually innocent.  ECF Doc. 6-1 at 29-30; *see also* ECF Doc. 6-1 at 1-18.  This argument is unavailing for two reasons.  First, the body camera footage and police report are not "new evidence" because they were available at the time of trial.  *See Schlup*, 513 U.S. at 324; ECF Doc. 8 at 368, 386-89 (prosecution asking Officer Payne to review the police report); ECF Doc. 8 at 323-24, 328, 331 (defense counsel asking Rencher about the body camera footage).  Second, Binford's allegedly new evidence is impeachment evidence, which the Sixth Circuit has held is insufficient to establish "actual innocence."  *In re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001); *Ford v. Burt*, No. 20-1070, 2020 U.S. App. LEXIS 16188, at *5 (6th Cir. May 20, 2020); *see also Calderon v. Thompson*, 523 U.S.

538, 563 (1998).  Because Binford is unable to demonstrate cause to excuse his procedural

default of several of his ineffective assistance sub-claims, we are not required to evaluate

Binford's claim that he was prejudiced by the constitutional violations he has alleged.  *See, e.g.,*

*Simpson v. Jones,* 238 F.3d 399, 409 (6th Cir. 2000).

       Because the majority of Binford's ineffective-assistance-of-trial-counsel arguments are

procedurally defaulted, I recommend that Binford's Ground Five claim be denied, in part, as

procedurally defaulted.

       **3.**    **Merits**

       Binford's Ground Five claim is also meritless – whether or not his procedurally-defaulted

arguments are considered.  Here, the Ohio Court of Appeals properly cited and applied the

*Strickland* standard in evaluating Binford's ineffective-assistance-of-trial-counsel claim on direct

appeal.  28 U.S.C. § 2254(d); ECF Doc. 6-1 at 62.  And the court reasonably determined that trial

counsel's representation was not constitutionally ineffective when counsel failed to have

admitted into evidence and use the body camera video footage because: (1) counsel alerted the

jury to the fact that Rencher's testimony and statements on the body camera footage may have

been inconsistent by specifically questioning Rencher about those statements during cross-

examination; and (2) Binford was not prejudiced by counsel's failure to have admitted to

evidence body camera video footage in which Rencher had stated that Binford shot Ward after

Ward chased Binford to the car.  *Harrington,* 562 U.S. at 102-103; *Jackson,* 443 U.S. at 332

n.50; *Schriro,* 550 U.S. at 473; 28 U.S.C. § 2254(d); ECF Doc. 6-1 at 61-62; ECF Doc. 8 at 323-

24, 328, 331.  Further, had Binford also presented his other arguments on appeal, the Ohio

Supreme Court could have reasonably concluded that trial counsel's representation was not

constitutionally ineffective.  Trial counsel's failure to use Officer Payne's police report or

specifically question witnesses about it did not prejudice Binford because: (1) Officer Payne's notes[7] that Rencher said Ward came to his aid against the male Rencher was fighting (Binford), chased him, and was shot by him does not help Binford's claim that someone else shot Ward; (2) Officer Payne's notes that Ward had said "one of the male[s] pulled a gun out of the car and shot him" could have still permitted the jury to conclude that Binford was the shooter; and (3) counsel's cross-examination of Rencher and direct examination of Henderson were sufficient to present Binford's alternative-shooter theory to the jury. *Strickland*, 466 U.S. at 694; ECF Doc. 6-1 at 5-55, 61; ECF Doc. 8 at 323-24, 328, 331; ECF Doc. 12-1 (police report); ECF Doc. 12-2 (police report); ECF Doc. 12-3 (police report). And the decision not to offer a police report into evidence that specifically indicated that Binford was or may have been the one who shot Ward was among the kinds of decisions counsel could have been expected to make in exercising sound professional judgment. *Strickland*, 466 U.S. at 690. Moreover, Binford's argument that trial counsel should have re-visited the crime scene is unavailing because Binford has not shown that there were any additional witnesses or other evidence that counsel could have discovered there, much less that such evidence would have been so overwhelming as to persuade the jury to disregard the other evidence that Binford, while driving his car, fired shots at Ward. *Strickland*, 466 U.S. at 690, 694.

Because the Ohio Court of Appeals properly applied federal law and reasonably determined (or could have reasonably determined) that trial counsel's representation was not deficient and did not prejudice him, Binford's Ground Five ineffective-assistance-of-counsel claim is meritless. 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 102-103; *Schriro*, 550 U.S. at 473. Accordingly, I recommend that the court deny Binford's Ground Five claim.

---

[7] Although not part of the state court record, Binford attached Officer Payne's police report to his traverse in ECF Doc. 12-1, ECF Doc. 12-2, and ECF Doc. 12-3.

**VI.**     **Certificate of Appealability**

    **A.**     **Legal Standard**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253 (c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *See, Cunningham v. Shoop,* Nos. 11-3005, 20-3429, 2020 U.S. App. LEXIS 26947, ___ F. App'x ___ (6th Cir. Aug 24, 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis,* 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 327, 336 (2003)); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484.

### B.      Analysis

If the Court accepts my recommendations, Binford will not be able to show that reasonable jurists could disagree with the conclusion that his Ground Four and Ground Five claims lack merit or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.  Further, the Court's conclusion concerning the procedural default of portions of Binford's Ground Five claims is not debatable.  Thus, I recommend that a certificate of appealability not be issued.

## VII.   Recommendations

Because all of Binford's claims are voluntarily dismissed, procedurally defaulted, or meritless, I recommend that Binford's petition for writ of habeas corpus be DENIED.  I also recommend that the Court DENY Binford a certificate of appealability.

Dated: September 8, 2020

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).